**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **SAM E. THOMPSON** | **CIVIL ACTION** |
| **VERSUS** | **NO. 09-6651** |
| **MARLIN N. GUSMAN, ORLEANS PARISH SHERIFF** | **SECTION "S"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I. Factual and Procedural Background

The petitioner, Sam E. Thompson ("Thompson"), is a state insanity acquittee currently committed to East Louisiana Mental Health System Forensic Division in Jackson, Louisiana.[2] On

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 15.

April 3, 2001, Thompson was charged by bill of information in Orleans Parish as a felon in possession of a weapon.[3]

At the preliminary hearing held April 20, 2001, the Trial Court scheduled a competency hearing to evaluate Thompson's mental state.[4] On May 8, 2001, prior to the start of the competency hearing, Thompson changed his plea from not guilty to not guilty and not guilty by reason of insanity.[5] The Court concluded the hearing and found Thompson competent to proceed to trial.[6]

Thompson was tried before the judge on September 13, 2001, and he was found not guilty and not guilty by reason of insanity.[7] After a hearing held on September 25, 2001, the Trial Court found Thompson to be a danger to himself and others.[8] The Court ordered that Thompson be placed in the East Louisiana Mental Health Forensic Division.[9]

On October 7, 2004, the Trial Court held a mental competency hearing and determined based on the psychiatric reports and testimony that Thompson was a danger to himself and others. The

---

[3]St. Rec. Vol. 2 of 8, Bill of Information, 4/3/01. His relevant prior felony conviction was in Case No. 339-705, referenced in his petition, where on May 8, 1990, he entered a plea of guilty to aggravated criminal damage where life was endangered and intentional or criminally negligent discharge of a weapon where life was endangered. St. Rec. Vol. 2 of 8, 339-705 Bill of Information, 12/8/89; 339-705 Minute Entry, 5/8/90. He was sentenced on the first count to serve five years in prison, which was suspended and he was placed on three years of supervised probation. St. Rec. Vol. 2 of 8, 339-705 Minute Entry, 5/8/90. On the second count, he was sentenced to two years in prison which was suspended and he was placed on three years of supervised probation concurrent with the other charge. *Id*.

[4]St. Rec. Vol. 1 of 8, Minute Entry, 4/20/01.

[5]St. Rec. Vol. 1 of 8, Minute Entry, 5/8/01.

[6]*Id*.

[7]St. Rec. Vol. 1 of 8, Trial Minutes, 9/13/01; St. Rec. Vol. 3 of 8, Trial Transcript, 9/13/01.

[8]St. Rec. Vol. 1 of 8, Hearing Minutes, 9/25/01.

[9]*Id*.

Court had Thompson transported back to Feliciana Forensic Unit, now known as the East Louisiana Mental Health Forensic Division.[10]

In later state court filings, Thompson established that, on October 11, 2004, he submitted an application for writ of habeas corpus to the state trial court, which was never filed into that court's record.[11] In that application, Thompson argued that, because of an error by the psychiatrists in reporting his prior convictions, the state trial court committed him to the forensic facility instead of having him released to a group home.

On September 29, 2004, Thompson submitted a writ application to the Louisiana Fourth Circuit seeking to have the Trial Court rule on his application for writ of habeas corpus.[12] The Court denied the application because the writ application could not be found in the trial court record and because, pursuant to La. Code Crim. P. art. 655(B), an application for a sanity hearing would not be considered until one year after the initial determination.[13]

On February 28, 2005, Thompson submitted another writ application to the circuit court submitting that he had proof that the Application for writ of habeas corpus had been mailed to the trial court on October 11, 2004.[14] The Louisiana Fourth Circuit denied the application because

[10]St. Rec. Vol. 1 of 8, Hearing Minutes, 10/7/04; St. Rec. Vol. 8 of 8, Competency Hearing Transcript, 10/7/04.

[11]St. Rec. Vol. 4 of 8, Copy of Application for Writ of Habeas Corpus, 10/11/04 (attached to Louisiana Supreme Court Writ Application).

[12]St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2005-K-0009, 1/4/05 (dated 12/29/04).

[13]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2005-K-0009, 2/25/05.

[14]St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2005-K-0410, 3/15/05 (dated 2/28/05).

Thompson did not attach a copy of the application for writ of habeas corpus for the Court to review.[15]

Thompson submitted a third application on April 14, 2005, asking the Louisiana Fourth Circuit to review his claim that he should have been placed in a group home, with a copy of the application for writ of habeas corpus attached.[16] The Court denied the application on May 10, 2005, citing its reasons for denying the first application in Case No. 2005-K-0009.[17] The Louisiana Supreme Court denied Thompson's related writ application without stated reasons on March 17, 2006.[18]

In the meantime, on June 23, 2005, the Trial Court held a mental competency hearing and determined that Thompson was still a danger to himself and others.[19] The Court ordered him transferred back to the forensic facility.

From that order, on June 27, 2005, Thompson submitted a writ application to the Louisiana Fourth Circuit complaining that the review panel improperly changed his diagnosis from schizophrenia to antisocial personality disorder, for which there is no medication or treatment.[20] He argued that this was arbitrary and improperly effected the trial Court's decision to put him back in the forensic facility.

---

[15]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2005-K-0410, 4/12/05.

[16]St. Rec. Vol. 4 of 8, 4th Cir. Writ Application, 2005-K-0608, 4/19/05 (dated 4/14/05).

[17]St. Rec. Vol. 4 of 8, 4th Cir. Order, 2005-K-0608, 5/10/05.

[18]*State ex rel. Thompson v. State*, 925 So.2d 531 (La. 2006); St. Rec. Vol. 4 of 8, La. S. Ct. Order, 2005-KH-1676, 3/17/06; St. Rec. Vol. 4 of 8, La. S. Ct. Writ Application, 05-KH-1676, 6/27/05 (dated 5/12/05); St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2005-KH-1676, 6/27/05.

[19]St. Rec. Vol. 1 of 8, Hearing Minutes, 6/23/05; St. Rec. Vol. 5 of 8, Hearing Transcript, 6/23/05.

[20]St. Rec. Vol. 5 of 8, 4th Cir. Writ Application, 2005-K-6041, 7/1/05 (dated 6/27/05).

The Louisiana Fourth Circuit denied the application on March 14, 2006, finding that the Trial Court had not abused its discretion or acted contrary to *Fourcha v. Louisiana*, 504 U.S. 71 (1992). Thompson did not seek further review of this order.

The Trial Court held another mental competency hearing on May 11, 2006, at which time the Court apparently determined that Thompson was ready to be moved to a group home as soon as space was available.[21] On June 15, 2006, the Trial Court placed Thompson on five years supervised probation pursuant to La. Code Crim. P. arts. 657, 658, and 895, subject to extension following annual competency hearings. The Court ordered, *inter alia*, that he be placed in the Harmony Transitional Center in Baton Rouge, Louisiana.[22] The Court amended the provisions of the probation order on February 15, 2007.[23]

On April 27, 2009, Officer Scott Tubbs from Probation and Parole sent a letter to the Trial Court explaining that Thompson had been arrested by the Baton Rouge police on February 14, 2009, after he caused a disturbance at the Harmony Transitional Center and was thrown out of the facility.[24] Officer Tubbs requested a probation revocation hearing be held.

On May 5, 2009, Thompson submitted a writ of habeas corpus to the Trial Court in which he alleged the following claims:[25] (1) he received no notice of the appointment of counsel, a revocation hearing, or any explanation for his continued confinement in the Orleans Parish Prison; (2) he has no effective remedy in the district court and the hearings held by the Trial Court did not

---

[21]St. Rec. Vol. 1 of 8, Hearing Minutes, 5/11/06.

[22]St. Rec. Vol. 3 of 8, Trial Court Order, 6/15/06.

[23]St. Rec. Vol. 2 of 8, Amended Supervised Probation Order, 2/15/07.

[24]St. Rec. Vol. 2 of 8, Letter from Probation and Parole, 4/27/09.

[25]St. Rec. Vol. 2 of 8, Writ of Habeas Corpus, 5/22/09 (dated 5/5/09).

conform to the due process requirements; (3) his due process rights were violated because he did not receive notice of the alleged probation violation; (4) he had not been taken before a tribunal for a revocation hearing or probable cause determination. He further complained that the State was jurisdictionally barred from proceeding against him, and he prayed for his return to the group home. The record contains no ruling by the Trial Court on this matter.

On June 2, 2009, Thompson submitted a petition for post-conviction relief to the Trial Court raising the following grounds for relief:[26] (1) the State was jurisdictionally barred from proceeding against him because there was no subject matter jurisdiction or original jurisdiction where no revocation hearing was held; (2) his detention violated double jeopardy, because he was reimprisoned for the same charge under the same bill of information; (3) La. Code Crim. P. art. 900(b) was unconstitutional, because it violated *Wolff v. McDonnell*, 418 U.S. 539 (1974) and *Morrissey v. Brewer*, 408 U.S. 471 (1972); and (4) the statutory scheme under La. Code Crim. P. arts. 655-658 and 899-900 was unconstitutional, because it allowed the State to use the forensic facilities as indefinite prisons. The record does not contain a ruling from the Trial Court on this matter.

That same day, June 2, 2009, Thompson submitted a writ application to the Louisiana Fourth Circuit in which he raised six grounds for relief from his detention:[27] (1) he received no notice of the violation, no pre-revocation hearing, formal hearing, or contradictory hearing; (2) he was being unconstitutionally detained by the Orleans Parish Sheriff; (3) La. Code Crim. P. art. 900(b) denied him due process and equal protection because it did not conform to the due process requirements

---

[26]St. Rec. Vol. 3 of 8, Petition for Post-Conviction Relief, 6/8/09 (dated 6/2/09).

[27]St. Rec. Vol. 6 of 8, 4th Cir. Writ Application, 2009-K-0781, 6/10/09 (dated 6/2/09).

set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and it diminished the State's burden of proof under *Fourcha*; (4) the State cannot re-incarcerate him where there is no finding of insanity or dangerousness; (5) under *Fourcha*, the State must prove insanity before commitment; and (6) he was denied due process under *Gagon v. Scarpelli*, 411 U.S. 778 (1973), and *Morrissey v. Brewer*, 408 U.S. 471 (1972). The Louisiana Fourth Circuit denied the application on June 30, 2009, because a competency hearing was set for July 2, 2009, and he was not entitled to the relief sought.

Thompson sought review of the order in the Louisiana Supreme Court on the following grounds:[28] (1) the appellate court erred in determining that the July 2, 2009, hearing would cure the due process violations under *Gagon* and *Morrissey*; (2) the appellate court erred in concluding that the competency hearing would not violate *Fourcha*; and (3) the statutory scheme under La. Code Crim. P. arts. 655-658 and 899-900 created issues that were novel to Louisiana jurisprudence.

The Louisiana Supreme Court eventually denied the writ application without stated reasons on September 4, 2009.[29] In the meantime, on July 2, 2009, the Trial Court held a rule to show cause hearing on the probation revocation.[30] After taking testimony, the Court revoked Thompson's probation and ordered that he be placed in the East Louisiana Mental Health System Forensic Division.[31]

---

[28]St. Rec. Vol. 6 of 8, La. S. Ct. Writ Application, 09-KH-1674, 7/22/09 (dated 7/14/09, postal metered 7/15/09); St. Rec. Vol. 2 of 8, La. S. Ct. Letter, 2009-KH-1674, 7/22/09 (showing postal meter date 7/15/09).

[29]*State ex rel. Thompson v. State,* 17 So.3d 951 (2009); St. Rec. Vol. 6 of 8, La. S. Ct. Order, 2009-KH-1674, 9/4/09.

[30]St. Rec. Vol. 1 of 8, Minute Entry, 7/2/09; St. Rec. Vol. 7 of 8, Transcript of Rule to Show Cause Hearing, 7/2/09.

[31]*Id.*

Thompson sought review of this ruling in the Louisiana Fourth Circuit raising the following grounds for relief:[32] (1) the State was jurisdictionally barred from proceeding against him because there was no hearing done in accordance with *Fourcha*; (2) he was denied due process; (3) the Louisiana statutes allow pre-hearing confinement which is unconstitutional; (4) double jeopardy prohibits re-incarceration under the same bill of information; (5) La. Code Crim. P. art. 900(b) was unconstitutional; and (6) the combined statutory scheme under La. Code Crim. P. arts. 655-658 and 899-900 was unconstitutional.

After obtaining the transcript from the July 2, 2009, the Louisiana Fourth Circuit denied the application finding no error in the Trial Court's order to revoke the probation.[33] Thompson did not seek further review of this order.

## II. **Federal Habeas Petition**

On October 1, 2009, the clerk of this Court filed Thompson's petition for federal habeas corpus relief, in which he raised 10 grounds for relief:[34] (1) the Louisiana Fourth Circuit erred in determining that the July 2, 2009, hearing would cure the due process violations under *Gagon* and *Morrissey*; (2) the Louisiana Fourth Circuit erred in concluding that the competency hearing would not violate *Fourcha*; (3) the statutory scheme under La. Code Crim. P. arts. 655-658 and 899-900 created issues that were novel to Louisiana jurisprudence; (4) La. Code Crim. P. art. 900(b) denied him due process and equal protection because it did not conform to the due process requirements set forth in *Wolff v. McDonnell*, 418 U.S. 539 (1974), and it diminished the State's burden of proof

[32]St. Rec. Vol. 7 of 8, 4th Cir. Writ Application, 2009-K-1108, 8/14/09 (dated 8/11/09).

[33]St. Rec. Vol. 7 of 8, 4th Cir. Order, 2009-K-1108, 12/14/09; *see also*, 4th Cir. Order, 2009-K-1108, 9/11/09.

[34]Rec. Doc. No. 1.

under *Fourcha*; (5) the State cannot re-incarcerated him where there is no finding of insanity or dangerousness; (6) he was denied due process under *Gagon v. Scarpelli*, 411 U.S. 778 (1973); (7) the State was jurisdictionally barred from proceeding against him because there was no subject matter jurisdiction or original jurisdiction where no revocation hearing was held; (8) his detention violated double jeopardy, because he was reimprisoned for the same charge under the same bill of information; (9) La. Code Crim. P. art. 900(b) was unconstitutional, because it violated *Wolff*; and (10) the statutory scheme under La. Code Crim. P. arts. 655-658 and 899-900 was unconstitutional, because it allowed the State to use the forensic facilities as indefinite prisons.

The State filed a response in opposition to Thompson's petition alleging that Thompson failed to exhaust available state court remedies except as to one of his claims.

## III. General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[35] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on June 10, 2009.[36] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was

[35]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[36]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Thompson's petition on October 1, 2009, when the filing fee was paid. Thompson dated his signature on the petition on September 15, 2009. This is the earliest date on which he could have submitted the pleadings to prison officials for mailing. The fact that he later paid the filing fee also would not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b)-(c) (2006)).

In this case, the State raised Thompson's failure to exhaust state court remedies. The State argues that Thompson failed to present the majority of his claims to the Louisiana Supreme Court and, those that were presented to that Court, were not properly presented to each of the lower courts to have a complete round of review as required for exhaustion. For the following reasons, the Court finds that Thompson has only exhausted state court remedies as to one of his ten claims, and his petition should be dismissed for that reason.

## IV. **Failure to Exhaust**

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

"A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Whitehead*, 157 F.3d at 387 (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001).

For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.*, at 32.

In this case, a review of Thompson's pleadings filed in the trial court, the writ applications filed with the appellate court, and the two writ applications filed in the Louisiana Supreme Court demonstrate that he has only had two claims proceed from the Trial Court through the Louisiana Fourth Circuit and then with the Louisiana Supreme Court for review.

The first of those claims was his assertion that an error by the psychiatrists led to the Trial Court's decision to place him in a forensic facility rather than a group home. This claim was raised in his initial request for review from the Trial Court's October 7, 2004, competency ruling. Relief on this issue was denied by the Louisiana Fourth Circuit in Writ No. 2005-K-0608 and the Louisiana Supreme Court in Writ No. 2005-KH-1676. This claim, although exhausted, is <u>not</u> urged in the present federal petition.

The second exhausted claim, which is raised before this Court as claim number two, is Thompson's assertion that the competency hearing process violated the parameters of *Fourcha*

because he was incarcerated before a finding of insanity or dangerousness. In his May 2009 petition for writ of habeas corpus filed in the Trial Court, Thompson argued that his detention was unconstitutional because there had been no finding of insanity or dangerousness. He later urged this claim, citing *Fourcha*, in Writ No. 2009-K-0781, in the Louisiana Fourth Circuit. He sought review of the claim again in the Louisiana Supreme Court under Writ No. 09-KH-1674. As conceded by the State, this claim has been exhausted.

Of the remaining nine claims raised in this federal petition, Thompson has not presented any of them to each of the three levels of the state courts in a procedurally proper manner as required for complete exhaustion. His first claim, that the Louisiana Fourth Circuit erred in determining that the July 2, 2009, hearing would cure the due process violations under *Gagon* and *Morrissey*, was raised to the Louisiana Fourth Circuit in Writ No. 2009-K-0781 and the Louisiana Supreme Court in Writ No. 09-KH-1674, on post-conviction review. The claim, however, was never presented to the state trial court for consideration. It therefore was not fully exhausted.

His third and tenth claims, both challenging the constitutionality of the statutory scheme under La. Code Crim. P. arts. 655-658 and 899-900, have been raised several times, however, not in a procedurally proper manner. Thompson raised the claims in the Trial Court in his June 2009 application for post-conviction relief. He then raised it to the Louisiana Supreme Court in Writ No. 2009-KH-1674 submitted July 14, 2009. After that and out of sequence, on August 11, 2009, he raised it to the Louisiana Fourth Circuit in Writ No. 2009-K-1108, from the denial of which he sought no further review. Thus, while the claim has appeared in pleadings in each of the state courts, it was not presented in a procedurally sequential order or in a line of review sufficient to exhaust his remedies.

His fourth and ninth claims, that La. Code Crim. P. art. 900(b) denied him due process and equal protection, were raised on post-conviction review to the Louisiana Fourth Circuit in Writ No. 2009-K-0781 and the Louisiana Supreme Court in Writ No. 09-KH-1674, on post-conviction review. The claims, however, were not raised in the Trial Court until his application for post-conviction relief submitted on June 2, 2009. The record does not contain a ruling from the Trial Court on that application. The claims, nevertheless, were not presented to the state courts in a procedurally sequential order or in a line of review sufficient to exhaust his remedies.

Thompson's fifth claim, that the State cannot re-incarcerate him where there is no finding of insanity or dangerousness prior thereto, and his sixth claim, that he was denied due process under *Gagon*, were raised on post-conviction review to the Louisiana Fourth Circuit in Writ No. 2009-K-0781. The claims, however, were not specifically raised in the Trial Court or the Louisiana Supreme Court.

Thompson raised his seventh claim, that the State was jurisdictionally barred from proceeding against him and there was no subject matter jurisdiction or original jurisdiction where no revocation hearing was held, in his writ of habeas corpus submitted to the Trial Court on May 5, 2009, and arguably in his application for post-conviction relief submitted on June 2, 2009. As noted above, the latter application was not ruled upon by the Trial Court. Thompson also did not raise the claim on review of the denial of the May 5, 2009, pleading. He, however, later raised the claim in his Louisiana Fourth Circuit Writ No. 2009-K-1108, which was denied by the appellate court on December 14, 2009. Thompson did not seek review of that ruling nor did he raise the claim in either of his Louisiana Supreme Court writ applications.

Thompson raised his eighth claim, that his detention violated double jeopardy, in his application to the Trial Court for post-conviction relief submitted on June 2, 2009. This application was not ruled upon by the Trial Court. He later raised the claim in his Louisiana Fourth Circuit Writ No. 2009-K-1108, which was denied by the appellate court on December 14, 2009. Thompson did not seek review of that ruling nor did he raise the claim in either of his Louisiana Supreme Court writ applications.

Thus, a review of Thompson's pleadings in each court, including the applications presented to the Louisiana Supreme Court, reflects that only one of the claims raised in this federal petition was properly and specifically raised in the state courts for review. His failure to present each of these arguments to each level of the Louisiana courts in a procedurally proper manner renders the remaining federal claims unexhausted. *See Wilder*, 274 F.3d at 259; *Baldwin*, 541 U.S. at 29. The record discloses no good cause for his failure to properly and fully exhaust his claims in the state courts, and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005).

Therefore, Thompson's mixed petition, presenting both exhausted and unexhausted claims, should be dismissed without prejudice to allow him to pursue complete exhaustion, unless he chooses to dismiss the unexhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

## V. Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Sam E. Thompson's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[37]

New Orleans, Louisiana, this 17th day of March, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

[37]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.